# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KATHLEEN ZIMMERSCHIED, | Civil No. 13-3431 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| JP MORGAN CHASE BANK, N.A., *as successor by merger to Chase Home Finance, L.L.C.*, | |
| Defendant. | |

Patrick M. Sutton, **THE LAW OFFICE OF PATRICK M. SUTTON**, 6200 Excelsior Boulevard, Suite 103, St. Louis Park, MN 55416, for plaintiff.

Marc D. Simpson and Calvin P. Hoffman, **STINSON LEONARD STREET LLP**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for defendant.

This case arises out of a mortgage agreement entered into by Plaintiff Kathleen Zimmerschied that was serviced by Defendant JP Morgan Chase Bank, N.A., as successor by merger to Chase Home Finance LLC ("Chase"). In an amended complaint Zimmerschied brings various statutory and common law claims arising out of her allegation that beginning in 2006 Chase consistently withdrew multiple mortgage payments each month from her personal bank account and line of credit but failed to properly apply these payments to her mortgage account balance and charged her

unnecessary fees and interest, ultimately referring her home for foreclosure, based on these failures.[1]

Chase moves to dismiss Zimmerschied's claims against it.   In response, Zimmerschied concedes that six of her claims are "overreach[ing]."   (Pl.'s Mem. in Opp'n to Mot. to Dismiss at 1, Mar. 3, 2014, Docket No. 25.)   Because Zimmerschied has made no argument in opposition to Chase's motion with respect to these claims, the Court will grant the motion and dismiss these six claims with prejudice.   The Court will also grant Chase's motion to dismiss Zimmerschied's claims for fraud and fraudulent disclosure for failure to comply with the pleading requirements of Federal Rule of Civil Procedure 9(b), but will dismiss the claims without prejudice and allow Zimmerschied a final opportunity to amend these claims.   Finally, the Court will deny Chase's motion with respect to Zimmerschied's breach of contract claim, as Zimmerschied's allegations, although they present a close question for purposes of Federal Rule of Civil Procedure 12(b)(6), are ultimately sufficient to state a plausible claim for relief under the liberal pleading standards of the Federal Rules.

---

[1] Zimmerschied initially brought the same claims based on almost identical allegations against CitiMortgage, Inc., arising out of a separate mortgage on the same property that was serviced by CitiMortgage.   After the present motion to dismiss was jointly filed by Chase and CitiMortgage, Zimmerschied and CitiMortgage stipulated to the dismissal of Zimmerschied's claims against CitiMortgage.   (Stipulation of Dismissal, June 20, 2014, Docket No. 3.)   Pursuant to this stipulation, the Court entered an order dismissing all claims against CitiMortgage with prejudice.   (Order, June 24, 2014, Docket No. 34.)   Accordingly, the Court will discuss Zimmerschied's allegations and the present motion to dismiss only to the extent they relate to the claims against Chase.

# BACKGROUND

## I.   THE MORTGAGES

On June 28, 2002, Zimmerschied executed a promissory note in favor of Highland Bank ("Highland") for a $100,000 revolving line of credit.  (Decl. of Kendall Bader, Ex. 1, Feb. 10, 2014, Docket No. 18.)[2]  As security for the line of credit, Zimmerschied granted Highland a mortgage on property located at 5417 84th Avenue North, Brooklyn Park, Minnesota ("the Property").  (*Id.*, Ex. 1 at 2.)[3]  This mortgage was recorded on October 28, 2002.  (*Id.*)

On August 28, 2002, Zimmerschied entered into a Hennepin County Rehabilitation Loan Program Deferred Loan Repayment Agreement and Mortgage.  (*Id.*, Ex. 2 at 8-11.)  Under the agreement, the City of Brooklyn Park provided Zimmerschied

---

[2] In support of its motion to dismiss, Chase submitted the Bader Declaration, which includes as exhibits four mortgages executed by Zimmerschied on the real property at issue in Zimmerschied's amended complaint.  Generally a motion to dismiss under Rule 12(b)(6) must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court."  Fed. R. Civ. P. 12(d).  Although "matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading."  *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (internal quotation marks omitted).  Documents embraced by the pleadings include those "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003).  Additionally, the court may consider "exhibits attached to the pleadings, and matters of public record."  *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).  Although the mortgage documents produced by Chase are not attached as exhibits to Zimmerschied's amended complaint, the amended complaint alleges the existence of the documents and courts frequently consider mortgage documents in cases like the present one where plaintiff challenges the foreclosure of her property and defendants' compliance with the terms of the mortgage documents.  *See, e.g.*, *Welk v. GMAC Mortg., LLC*, 850 F. Supp. 2d 976, 990 (D. Minn. 2012) (considering mortgage documents produced by defendants in support of a motion to dismiss).  Accordingly, the Court's recitation of the facts includes, and the Court has considered in ruling on the present motion, the four mortgage documents produced by Chase.

[3] All references to page numbers refer to the CMECF pagination.

with a $20,000 interest-free loan "for rehabilitation work" on Zimmerschied's residential home located on the Property. (*Id.*, Ex. 2 at 8.) In connection with this loan Zimmerschied granted the City of Brooklyn Park a mortgage on the Property, which was recorded on May 12, 2004. (*Id.*, Ex. 2 at 8-9.)

On September 12, 2002, Zimmerschied refinanced one of the previous mortgages on the Property by executing a promissory note in favor of Frontline Finance, LLC ("Frontline") in the principal amount of $143,200. (Am. Compl. ¶¶ 11-12, Jan. 20, 2014, Docket No. 11; Bader Decl., Ex. 3 at 13-21.) In connection with the loan, Zimmerschied granted a mortgage ("the Mortgage") on the Property to Mortgage Electronic Registration Systems, Inc. as nominee for Frontline, which was recorded on October 18, 2002. (Bader Decl., Ex. 3 at 13-14.) Servicing of the Mortgage was transferred to Chase Home Finance, L.L.C., on March 5, 2003. (Am. Compl. ¶ 19.) Chase Home Finance, L.L.C. later merged with Defendant Chase, who became Chase Home Finance's successor of interest. (*Id.*)

On October 23, 2002, Plaintiff executed another promissory note in the principal amount of $143,000 in favor of ABN Amro Mortgage Group, Inc. ("ABN"). (*Id.* ¶¶ 53-54; Bader Decl., Ex. 4 at 23.) Zimmerschied granted ABN a mortgage on the Property, which was recorded in Hennepin County on November 26, 2002. (Bader Decl., Ex. 4 at 23-30.) ABN declared bankruptcy in 2007 and CitiMortgage became the successor in interest of ABN by merger. (Am. Compl. ¶ 57.)

## II.   SERVICING ISSUES

Zimmerschied alleges that she made her payments on the Mortgage using personal checks written from her TCF Bank ("TCF") checking account.  (*Id.* ¶ 20.)  Zimmerschied alleges that in June 2006

> Chase began postponing payments or losing the payments until after the due dates of the payments for reasons unknown to Ms. Zimmerschied. Ms. Zimmerschied realized that the "received" dates were much later than the cleared dates, if they cleared at all, on her bank statements.  In other words, Ms. Zimmerschied was sometimes given credit on her mortgage account but Chase did not give that credit for a payment until months later. In the meantime, Chase charged late fees for Plaintiff not paying her mortgage.

(*Id.* ¶ 21.)  In August 2006, Chase notified Zimmerschied that she was delinquent on her mortgage payments.  (*Id.* ¶ 22.)  A month later Zimmerschied first noticed that Chase processed one of her payments twice – first as a paper check, and then as an Automatic Clearing House ("ACH") debit – resulting in two separate debits to her bank account. (*Id.* ¶ 23 & n.2.)  Zimmerschied alleges that throughout the next year Chase continued to process payments multiple times, once even processing a single check ten times, but "did not apply Ms. Zimmerschied's payments to pay down her mortgage balance" and "continually assessed late fees to Ms. Zimmerschied's account."  (*Id.* ¶¶ 24-25, 27-28.) During this period of time Chase's actions of processing single checks multiple times caused Zimmerschied's TCF account to be "overdrawn on innumerable occasions." (*Id.* ¶ 29.)

Zimmerschied alleges that when she contacted Chase to ask why her payments were being processed multiple times, she would either be asked for copies of the original

checks, provided with a single posting date even if the payment had been submitted multiple times, the Chase representative would deny wrongdoing, or the representative would state that TCF should have reversed duplicate items.  (*Id.* ¶ 30.)  The situation of Chase processing single checks multiple times while simultaneously not crediting her mortgage account for those payments persisted when Zimmerschied switched to making payments using official bank checks, rather than personal checks.  (*Id.* ¶¶ 31-33.)  During this period of time Zimmerschied brought her concerns about Chase's practices to the Federal Trade Commission and the Office of Minnesota's Attorney General but "the investigations withered away" when Chase denied wrongdoing.  (*Id.* ¶ 33 n.7.)

In an effort to move away from the problematic check payment system, Zimmerschied set up a line of credit at TCF on April 18, 2007, with an original credit limit of $205,000 which was later increased to $220,000.  (*Id.* ¶ 35.)  On May 15, 2007, Zimmerschied authorized an automatic monthly payment of $893.38 to Chase from the line of credit.  (*Id.* ¶ 36.)  Zimmerschied contends that she did not receive a welcome letter from Chase regarding these automatic payments until October 14, 2009.  (*Id.* ¶ 36, Ex. 5 at 47.)[4]  In the letter Chase indicated that it would debit $893.38 as the "total monthly payment amount" from Zimmerschied's account.   (*Id.*, Ex. 5 at 47.) Zimmerschied alleges that Chase in fact took two payments from her account each month, and starting in February 2012 began taking four payments each month.  (*Id.* ¶ 36.) Bank records from TCF indicate that Chase at least attempted to make multiple withdrawals in a single month as alleged by Zimmerschied.  (*See, e.g.*, *id.*, Ex. 2 at 22

---

[4] The exhibits to the amended complaint were filed at Docket Number 12.

(showing withdrawals of $893.38 by Chase on January 5, 2010, January 13, 2010, January 15, 2010, January 21, 2010, February 1, 2010, and February 15, 2010).) Zimmerschied alleges that since February 2012 Chase has withdrawn $108,890.67 from her TCF line of credit and "has never applied any of [its] TCF line of credit withdrawals to Ms. Zimmerschied's mortgage balance." (*Id.* ¶¶ 36-37.)

When she attempted to stop the withdrawals, Zimmerschied alleges that she was unsuccessful as "[b]oth Chase and TCF National Bank denied liability for the withdrawals continuing to occur and also denied the ability to stop the withdrawals from occurring." (*Id.* ¶ 39.) When Zimmerschied spoke with a Chase representative, the representative explained that each repeat withdrawal was actually a refusal by TCF to pay Chase the requested amount. (*Id.* ¶ 41.)

Zimmerschied was served with a notice of a foreclosure sale on December 10, 2012. (*Id.* ¶ 43.) Zimmerschied was served with another notice on February 21, 2013, scheduling that sale for April 20, 2013. (*Id.* ¶ 45; *id.*, Ex. 6.) The sale was postponed after Zimmerschied filed a postponement affidavit, and the rescheduled sale for September 20, 2013 was also postponed "in preparation of this civil action." (*Id.* ¶ 45.) Zimmerschied alleges that between April 18, 2007 and October 15, 2013, Chase has automatically withdrawn $216,096.27 from her line of credit. (*Id.* ¶ 47.) Zimmerschied also alleges that "Chase is still automatically withdrawing funds from the TCF line of credit account at the time of filing this Complaint." (*Id.* ¶ 50.)

# ANALYSIS

## I.      STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.   *Id.* (internal quotation marks omitted).   Finally, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## II.      FAILURE TO OPPOSE DISMISSAL

Chase moved for dismissal of Zimmerschied's amended complaint in its entirety. In response to the motion to dismiss, Zimmerschied "concedes that she may have overreached in some of her claims against Defendants," but that her "claims of breach of contract, fraud, and fraudulent nondisclosure have been properly put forth as claims."

(Pl.'s Mem. in Opp'n to Mot. to Dismiss at 1.)   Accordingly, Zimmerschied did not respond to any of Chase's arguments seeking dismissal of her claims for violations of Minn. Stat. § 47.59 (Count I), Minn. Stat. §§ 47.20 and 47.59 (Count II), Minn. Stat. § 58.13 (Count III), and Minn. Stat. § 58.14 (Count IV), as well as negligent misrepresentation (Count VII) and unjust enrichment (Count IX), and made arguments only with respect to her breach of contract, fraud, and fraudulent inducement claims. (*See generally id.*)   The Court interprets Zimmerschied's concession that six of her claims are overreaching, accompanied by her failure to respond to the motion to dismiss with respect to those claims, as a voluntary abandonment.   *See Ursery v. Fed. Drug Enforcement Admin.*, Civ. No. 12-1911, 2014 WL 117627, at *2 (E.D. Mo. Jan. 13, 2014) ("Plaintiff has utterly failed to address Defendant's arguments in support of its Motion to Dismiss.  The Court construes such failure as an abandonment of Plaintiff's claims."); *Figueroa v. U.S. Postal Serv.*, 422 F. Supp. 2d 866, 879 (N.D. Ohio 2006) (dismissing with prejudice a cause of action interpreting "Plaintiff's failure to respond to the arguments of the Postal Service to be a concession that her Seventh Cause of Action fails to state a[] claim").  Accordingly, the Court will dismiss Counts I through IV and Counts VII and IX of Zimmerschied's amended complaint with prejudice.

## III.   FRAUD (COUNT V)

To state a claim for fraud under Minnesota law, Zimmerschied must allege: (1) a false representation by Chase of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing

- 9 -

whether it was true or false; (3) with the intention to induce Zimmerschied to act in reliance thereon; (4) that the representation caused Zimmerschied to act in reliance thereon; and (5) that Zimmerschied suffered pecuniary damages as a result of the reliance. *See Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 368 (Minn. 2009).

> Zimmerschied's fraud claim is based on her allegation that
>
> Defendants have made claims to Ms. Zimmerschied that payments were not made or if Defendants did receive the payment, it was made late. Defendants have made claims to Ms. Zimmerschied that payments were not processed multiple times. Defendants are currently claiming that they are not withdrawing any funds from Ms. Zimmershied's TCF line of credit and that those funds are not being received into Defendants' accounts.

(Am. Compl. ¶ 130.) Zimmerschied further alleges that she "not being an investment banker, securities dealer, mortgage lender, or mortgage broker, reasonably relied upon the representations of the Defendants as she has sent in numerous paper checks in addition to the TCF line of credit withdrawals as Defendants claimed they were not receiving the line of credit withdrawal funds. Defendants ended up processing both forms of payment." (*Id.* ¶ 134.) With respect to reliance, Zimmerschied alleges that had she "known of the falsity of Defendants' representations, Ms. Zimmerschied would not have mailed in any subsequent payments to Defendants." (*Id.* ¶ 135.)

Chase argues that Zimmerschied's fraud claim must be dismissed because her claims fail to comply with the particularity requirement of Federal Rule of Civil Procedure 9, demonstrate no reasonable reliance as a matter of law, and are barred by the statute of limitations. The Court will address each of these arguments in turn.

## A.    Particularity

To adequately plead a claim for fraud "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Raynor v. Nat'l Rural Utilities Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (internal quotation marks omitted). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (internal quotation marks omitted).  Because the purpose of Rule 9(b) is to give defendants an opportunity to respond quickly and accurately to damaging fraud allegations, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks omitted).  "But Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the core factual basis for the fraud claims." *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013) (internal quotation marks omitted).  Ultimately, "[t]he level of particularity required depends on the nature of a case." *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012).

The Court concludes that Zimmerschied's allegations fail to meet the requirements of Rule 9(b) because they do not specify the who, what, when, where, and how of her fraud claim.  In particular, Zimmerschied's fraud claim is missing allegations regarding who made the statements, when the statements were made, the exact nature of the misrepresentations, and where they were made.  With respect to who, the amended complaint alleges generally that "Defendants" – including now dismissed CitiMortgage – "made claims" to her regarding her mortgage payments.  (Am. Compl. ¶ 130.)  But "Rule 9(b) is not satisfied when the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"  *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009) (internal quotation marks omitted).  Such pleadings require a defendant "to guess which allegations in the complaint were pleaded against it, rendering it difficult (if not impossible) to adequately frame a response, which is precisely the problem that Rule 9(b) was designed to remedy."  *Id.* (internal quotation marks omitted).  Zimmerschied's allegations are insufficient to specify who made which of the several misrepresentations alleged, and therefore fail to provide Chase with an adequate opportunity to respond to the allegations in violation of Rule 9(b).  *See Petersen v. England*, Civ. No. 09-2850, 2010 WL 3893797, at *10 (D. Minn. Sept. 30, 2010) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (alterations in original) (internal quotation marks omitted)).

As for when the fraud occurred, Zimmerschied's fraud allegations apparently arise out of a relationship with Chase that has existed since March 2003 when the servicing of the Mortgage was transferred to Chase, yet contain no indication of when the misrepresentations occurred.   This is insufficient to meet Rule 9(b)'s particularity requirement.  *See Superior Edge, Inc. v. Monsanto Co.*, Civ. No. 12-2672, 2013 WL 6405362, at *4 (D. Minn. Dec. 6, 2013) (dismissing a fraud claim under Rule 9 where "SEI's complaint fails to allege with sufficient specificity when the allegedly misleading statements were made.  SEI alleges that the statements were made before May 2011, but this fails to provide SST with adequate notice of the conduct for which it may be liable. SST had a relationship with Monsanto for at least two years prior to May 2011, but SEI's complaint does not identify any particular time during the course of this relationship that the statements were made.").

Additionally, Zimmerschied has not identified with any particularity what specific misrepresentations she bases her claim on or where these statements were made.[5]  For example, Zimmerschied has not alleged any particular phone calls, mortgage statements, or letters that contained the allegedly misrepresentative material.  *See Ransom*,

---

[5] Zimmerschied's response to Chase's motion to dismiss with respect to Rule 9(b) reflects a fundamental misunderstanding of the "who, what, when, where and how" pleading requirement for fraud claims.  Specifically, Zimmerschied states that she "will concede that 'where' the money goes after Chase . . . withdrew it from her TCF line of credit is of grave concern.  Plaintiff's First Amended Complaint states that Defendant Chase withdraws the funds and it goes to account [sic] owned by Chase Home Mortgage. . . . Further discovery is necessary to assess that account to discern what funds are in that account and why those funds are not being applied to Plaintiff's mortgage."  (Pl.'s Mem. in Opp'n to Mot. to Dismiss at 6.)  But the "where" in Rule 9(b) refers to where the alleged misrepresentations occurred, not where the funds from Zimmerschied's line of credit went.  Because Zimmerschied was the recipient of the alleged misrepresentations she should be able to allege where – in what documents, telephone calls, or other communications – the misrepresentations were made.

918 F. Supp. 2d at 899 (concluding that a fraud claim was not pled with particularity where it did not specify "in what writings or oral communications these misrepresentations were made").   Nor has Zimmerschied identified, other than very generally, what Chase told her about her mortgage payments that misled her.  *See Nelson v. Frana Cos.*, Civ. No. 13-2219, 2013 WL 6500165, at *3 (D. Minn. Dec. 11, 2013) (finding that a complaint did not satisfy Rule 9(b) where "[a]lthough the Funds allege generally that Diamond mailed false fringe-benefit-fund reports and checks for underpayments, the Funds do not identify with specificity the date or contents of any of these reports or checks"); *In re Mirapex Prods. Liab. Litig.*, 246 F.R.D. 668, 672 (D. Minn. 2007) (dismissing a fraud claim as deficient which merely alleged that defendant made "false representations denying any link between [defendant's product] and compulsive gambling," because the complaint did not cite "[s]pecific statements or omissions").  Although Zimmerschied is not required to "plead every detail of the alleged fraud, the allegations must be sufficient to allow Defendants to respond."  *Ransom*, 918 F. Supp. 2d at 900.   In light of the general nature of Zimmerschied's allegations, the Court concludes that her amended complaint does not satisfy the requirements of Rule 9(b) and will therefore grant Chase's motion to dismiss on this basis.  Because it is not clear that Zimmerschied would be unable to allege a viable fraud claim under Rule 9(b) if provided with an opportunity to amend her complaint, the Court will dismiss the claim without prejudice, and allow Zimmerschied a final opportunity to amend this claim.

That Rule 9(b)'s requirements have not been satisfied is further highlighted by Chase's arguments regarding dismissal on the basis of reliance and the statute of limitations. It is almost impossible to discern whether Zimmerschied's allegations are supported by the necessary reliance element or occurred within the statute of limitations because the allegations are devoid of any specificity regarding the statements or when the statements were made. Dismissing on the basis of Rule 9(b) is more than a mere technicality in this case. In other words, as discussed below, Zimmerschied's vague and general fraud claim – as currently alleged – would likely entitle her to no relief on a variety of other grounds. Although the Court dismisses on the basis of Rule 9(b) it goes on to consider Chase's other arguments for dismissal to highlight the deficiencies that any amended fraud claim must also cure.

### B.   Reliance

A plaintiff's "[d]etrimental reliance is an essential element of a common law fraud claim." *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 491 (8th Cir. 2004); *see also Nilsen v. Farmers' State Bank of Van Hook, N.D.*, 228 N.W. 152, 153 (Minn. 1929). Actual reliance "means that the plaintiff took action, resulting in some detriment, that he would not have taken" if the defendant had not made a misrepresentation, or that the plaintiff "failed, to his detriment, to take action that he would have taken" had the defendant been truthful. *Greeley v. Fairview Health Servs.*, 479 F.3d 612, 614 (8th Cir. 2007). Additionally, to establish reliance, a plaintiff must show that he believed the alleged misrepresentation to be true. The listener "may rely on the representation so long

as it is not known by the listener to be false and is not obviously false." *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 321 (Minn. 2007).

Here, analyzing Zimmerschied's allegations at their current level of generality, it appears that they fail to plausibly allege the reliance element of her fraud claim. For example, Zimmerschied alleges generally that Defendants claimed that her mortgage payments were "not made" or "made late." (Am. Compl. ¶ 130.) But the basis of Zimmerschied's entire case is that she did make timely payments, but Chase failed to properly credit those payments. Therefore, Zimmerschied has not explained how she could have reasonably relied upon this alleged misrepresentation if she knew that she had submitted timely payments. Similarly, Zimmerschied contends that "Defendants are currently claiming that they are not withdrawing any funds from Ms. Zimmerschied's TCF line of credit." (*Id.*) But Zimmerschied's allegations are based in large part on her claim that she knows that Chase is, in fact, withdrawing funds from her line of credit, and has documentary evidence from her bank records to prove it. Therefore, even if she did rely on Chase's alleged current statements that they are not withdrawing funds, this would not be reasonable reliance because she knows these representations are false. Finally, Zimmerschied claims that Defendants misrepresented that they were not processing her payments multiple times. Although initially Zimmerschied may have relied on this statement, her amended complaint is filled with examples of instances where she discovered that Chase was, in fact, processing her payments multiple times. (*See, e.g.*, Am. Compl. ¶¶ 23-27, 30-33.) After she discovered the multiple processing problem – which Zimmerschied alleges was as early as September 2006 (*id.* ¶ 23 n.2) it

would no longer have been reasonable for her to rely on such representations.  Although it is possible that Zimmerschied relied on some statements made by Chase at certain points in time, Zimmerschied's current allegations suffer from at least two problems. First, they lack the specificity required to plead fraud under Rule 9.  Second, even with such specificity, the Court is doubtful that at least some of the allegations would support an inference of **reasonable** reliance, given that Zimmerschied appears not to have believed many of the statements forming the basis of her fraud claim at the time they were made.  Accordingly, the Court notes that any amendment of Zimmerschied's amended complaint to address the Rule 9(b) deficiencies must also plausibly allege reliance in order to state a claim for fraud.[6]

### C.      Statute of Limitations

Finally, Chase argues that Zimmerschied's fraud claim is barred by the statute of limitations, which requires fraud claims to be commenced within six years of "the discovery by the aggrieved party of the facts constituting the fraud."  Minn. Stat. § 541.05, subd. 1(6).  Chase argues that, based upon the allegations in the amended complaint, Zimmerschied discovered Chase's alleged fraud in June 2006 when

---

[6] In response to the motion to dismiss Zimmerschied has offered no explanation of how her amended complaint plausibly alleges that she relied on the alleged misrepresentations. Instead, Zimmerschied contends that "[o]n multiple occasions, as Plaintiff has already alleged in her First Amended Complaint, that [sic] Chase . . . would promise to look into and find resolution but never did.  Had Plaintiff known Defendants were not going to take her inquiries seriously, she would not have relied on those representations and filed suit far sooner."  (Pl.'s Mem. in Opp'n to Mot. to Dismiss at 6-7.)  This fraud claim – that Chase misrepresented its intent to investigate Zimmerschied's inquiries – is not, however, alleged in the amended complaint, and therefore does not alter the Court's conclusion that, as currently pled, Zimmerschied's fraud claim fails in many respects to plausibly allege reliance as a result of the lack of detail in the allegations.

Zimmerschied "realized" that "Chase began postponing payments or losing the payments until after the due dates of the payments," (Am. Compl. ¶ 21), but Zimmerschied did not file a complaint until November 2013 – more than six years after this discovery (*see* Notice of Removal, Ex. 1, Dec. 12, 2013, Docket No. 1).   In response, Zimmerschied contends that "[t]he fraud began when Chase unilaterally decided to start taking out more than one payment per month [from Zimmerschied's line of credit].   That, was discovered in 2009 and therefore that claim of fraud is timely."   (Pl.'s Mem. in Opp'n to Mot. to Dismiss at 7.)   But this fraud allegation – based on misrepresentations about the number of payments to be withdrawn from Zimmerschied's line of credit – is not contained in Zimmerschied's current fraud claim.   (*See* Am. Compl. ¶ 130.)   Furthermore, although it appears that Zimmerschied is attempting to limit her fraud claim to those instances of misrepresentations within the statute of limitations, as currently pled her fraud claim – without any specifics about when particular misrepresentations were made – appears to include conduct occurring outside the limitations period.   Because it is possible that amendment to bring the fraud claim into compliance with Rule 9(b) could cure the existing statute of limitations deficiencies, the Court finds that dismissal without prejudice is appropriate.   The Court cautions Zimmerschied that it will provide no further opportunities to amend this claim.

## IV.   FRAUDULENT NONDISCLOSURE (COUNT VI)

To establish a claim for fraudulent nondisclosure, a plaintiff must demonstrate that the defendant had "'a legal or equitable obligation' to communicate facts to a particular

person and that person is entitled to the information." *Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn. 2002) (quoting *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989)); *see also Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 190 (Minn. 1999).

> As a general rule, one party to a transaction has no duty to disclose material facts to the other.  However, [s]pecial circumstances may dictate otherwise. For example: (a) One who speaks must say enough to prevent his words from misleading the other party[;] (b) One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party[;] (c) One who stands in a confidential or [f]iduciary relation to the other party to a transaction must disclose material facts.

*Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976) (citations and internal quotation marks omitted).  In addition to alleging a duty to disclose, to state a claim for fraudulent nondisclosure, a plaintiff must also allege the other elements of an ordinary fraud claim.  *See Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1074 (D. Minn. 2013).

> Zimmerschied's fraudulent nondisclosure allegations state, in full:

> Defendants Chase and CitiMortgage have concealed material facts.  The facts are within the Defendants' knowledge.  Defendants[] know that Ms. Zimmerschied will rely on the nondisclosure on the presumption that the facts do not exist.  Defendants have a legal and equitable duty to communicate the facts to Ms. Zimmerschied.  The duty of disclosure exists because a confidential and/or fiduciary relationship exists between Ms. Zimmerschied and Defendants.  Disclosure is also necessary to clarify misleading information already disclosed and because Defendants are the ones with the special knowledge of the material facts to which Ms. Zimmerschied does not have access.

(Am. Compl. ¶ 140.)  Chase moves to dismiss this claim because it fails to comply with the particularity requirements of Rule 9(b), Chase did not owe Zimmerschied a duty to

disclose material facts, and the claim is barred by the independent duty rule, as the duties it alleges arise out of the Mortgage.

## A.   Particularity

As with fraud claims, claims for fraudulent disclosure in Minnesota must be pled with particularity and comply with the requirements of Federal Rule of Civil Procedure 9(b).   *See Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 672-73 (8th Cir. 2012).   To satisfy the particularity requirement with respect to fraudulent nondisclosure claims, plaintiffs are generally required to allege:

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

*Remmes v. Int'l Flavors & Fragrances, Inc.*, 453 F. Supp. 2d 1058, 1072 (N.D. Iowa 2006) (internal quotation marks omitted).

Zimmerschied's fraudulent nondisclosure claim contains even less specificity than her fraud claim, and merely recites the elements of the cause of action without providing any factual detail about the basis of her claims.   Zimmerschied states only that Defendants have concealed "material facts" but fails to provide any information about, among other things, what events occurred triggering a duty to disclose, the content of the information that was withheld and why it was material, or how Zimmerschied relied on

any of Defendants' omissions.  *Cf. Remmes*, 453 F. Supp. 2d at 1073-77 (finding that

plaintiff had identified with particularity "the general content of the information that was

withheld" where he listed the specific facts which defendants withheld including the

specific adverse health consequences of defendants' products).  Accordingly, the Court

will grant Chase's motion to dismiss Zimmerschied's claim for fraudulent nondisclosure.

However, as with the fraud claim the Court will provide Zimmerschied with a final

chance to amend her complaint to state a claim for fraudulent nondisclosure, because it is

possible that amendment of the complaint to cure the Rule 9(b) deficiencies will also cure

the other potential deficiencies identified by Chase.

### B.     Duty to Disclose

Chase also argues that Zimmerschied's fraudulent nondisclosure claim must be

dismissed because Zimmerschied has failed to allege any special circumstances giving

rise to a fiduciary relationship between herself and Chase, and therefore has not alleged a

duty to disclose.  As explained above, a duty to disclose material facts can arise not only

in situations involving a fiduciary relationship, but also where disclosure is necessary to

make a previous statement not misleading or where one party has special knowledge of

material facts.  *See Richfield Bank & Trust*, 244 N.W.2d at 650.  Given the lack of

specificity in the pleadings, it is almost impossible to assess at this stage whether the

exceptions to the general rule that there is no duty to disclose that do not rely upon the

existence of a fiduciary duty, could apply to these facts.  In other words, in the absence of

any allegations regarding what material Chase failed to disclose, the Court cannot

determine whether disclosure of that material was required based upon a previous statement or because Chase had special knowledge of those facts.  Although it is apparent that Zimmerschied has failed to plead the existence of special circumstances giving rise to a fiduciary duty, only if her fraudulent nondisclosure claim is amended to bring it into compliance with Rule 9(b) can the Court accurately assess whether a duty to disclose existed.  Accordingly, the Court will allow Zimmerschied to amend her fraudulent nondisclosure claim, but cautions that it must also adequately allege the existence of one of the exceptions to the general rule that one party to a transaction owes no duty to disclose material facts.

### C.    Independent Duty Rule

The independent duty rule provides that a plaintiff cannot recover damages in tort for an alleged breach of contract except in "exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort."  *Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975); *see also Hanks v. Hubbard Broad., Inc.*, 493 N.W.2d 302, 308 (Minn. Ct. App. 1992).  But the mere existence of a governing contract between the parties does not preempt or eliminate the possibility of a tort claim.  *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998).  If a tort claim is based on a breach of duty that "is indistinguishable from the breach of contract," the tort claim will fail, but if "a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself," the tort claim is viable.  *Hanks*, 493 N.W.2d at 308 (internal quotation marks omitted).  Put differently, "[a] fraud claim

independent of the contract is actionable, but must be based upon a misrepresentation that was outside of or collateral to the contract." *AKA Distrib. Co.*, 137 F.3d at 1086; *see also Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 887 (8th Cir. 2000) ("[A]n independent fraudulent concealment claim will not lie where the fraudulent concealment relates to a promisor's duties under the contract.").

Chase argues that the fraudulent nondisclosure claim is barred under this doctrine because "Plaintiff's fraudulent nondisclosure claim likewise relates solely to the . . . Mortgage . . . – i.e., whether [Chase] ha[s] properly accepted and credited the payments required under the . . . agreement[]." (Defs.' Mem. in Supp. of Mot. to Dismiss at 24, Feb. 10, 2014, Docket No. 17 (formatting omitted).)  But Chase's argument reflects a more nuanced understanding of Zimmerschied's claim than what is actually alleged in the amended complaint.  The amended complaint states only that Defendants concealed material facts from her – and says nothing about properly accepting or crediting payments under the Mortgage.  Therefore, at this stage – in the absence of compliance with Rule 9 – it is impossible to assess whether the independent duty rule would bar Zimmerschied's claims, as it is unclear to what extent they relate to Chase's duties under the Mortgage.  Accordingly, although the Court declines to dismiss on the basis of the independent duty rule, it notes that any amendment of Zimmerschied's fraudulent nondisclosure claim must also establish a duty on the part of Chase to disclose certain facts to her that is independent of its duties under the Mortgage in order to present a viable claim.

## V.     BREACH OF CONTRACT (COUNT VIII)

To state a claim for breach of contract under Minnesota law, a "plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011).

Zimmerschied's breach of contract claim is based upon her allegation that she has been making payments on the Mortgage "on-time since May 2007." (Am. Compl. ¶ 146.)   Although Chase has accepted those payments into its bank account, it has breached the terms of the Mortgage by "refus[ing] to acknowledge those payments into [its] bank accounts and furthermore ha[s] refused to apply those payments to Ms. Zimmerschied's mortgage balance." (*Id.*)

Chase argues that Zimmerschied's breach of contract claim must be dismissed because it "is implausible on its face under the *Iqbal-Twombly* standard." (Defs.' Mem. in Supp. of Mot. to Dismiss at 25.)   Specifically, Chase notes that Zimmerschied's allegations against it are almost identical to those originally brought against CitiMortgage, and argues that it is implausible "that two unrelated financial institutions made numerous, ongoing, and **identical** errors – over a period of more than six years – processing and crediting her mortgage payments first from two separate checking accounts and then from the same line of credit." (*Id.* (emphasis in original).)   Chase also argues that Zimmerschied's claim is not plausible because she alleges that she had a $220,000 limit on her line of credit, but that Chase and CitiMortgage have collectively withdrawn $335,641.69. (*Id.*)   Chase explains, "[a]lthough Plaintiff does not account for

this discrepancy, the only way that Defendants could have withdrawn that amount is if Plaintiff actively, and aggressively, paid down the line of credit so that Defendants could allegedly continue to withdraw funds." (*Id.*)

Although the amended complaint does present an unusual set of allegations, Rule 12(b)(6) "does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations." *Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 682 (N.D. Iowa 1995) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  Here, the Court concludes that based upon the allegations in the amended complaint, Zimmerschied has stated a plausible claim for breach of contract.  Zimmerschied has alleged the existence of a valid mortgage contract and has alleged that despite her prompt payment, Chase withdrew excess money from her bank accounts and failed to apply those funds to the Mortgage.  These allegations, if true, would plausibly entitle Zimmerschied to relief.

None of Chase's arguments render Zimmerschied's allegations so implausible as to warrant dismissal under Rule 12(b)(6).  Although perhaps rare, it is not out of the question that two separate loan servicers – especially when servicing mortgages on the same property and dealing with the same borrower and the same line of credit – would commit similar mistakes or breaches with respect to withdrawal of funds and application of those funds to mortgage accounts.  The plausibility of Zimmerschied's claim is bolstered by the fact that she has documentary evidence showing that Chase at least attempted multiple withdrawals in a single month.  (Am. Compl., Ex. 2 at 22 (showing withdrawals of $893.38 by Chase on January 5, 2010, January 13, 2010, January 15, 2010, January 21, 2010, February 1, 2010, and February 15, 2010).)  Additionally,

although Zimmerschied's claims about the amount of money withdrawn by Chase and CitiMortgage would have required her to make substantial payments to TCF in order to sustain sufficient available credit to make those withdrawals possible, there are numerous reasons why a person might continue to pay on a line of credit, even after discovering that her mortgage servicers were withdrawing sums in excess of her monthly payment. For example, Zimmerschied alleges that she was unable to get TCF to stop payments to Chase or correct the charges. Zimmerschied may well have continued to make payments on her line of credit due to concerns about her credit score, concerns about her other accounts at TCF, or because she hoped to be able to resolve the issue with the Mortgage and assumed that the money she paid in to the line of credit would eventually be applied to the mortgage payments. It is not implausible, for example, for a plaintiff to pay a bill she knows she does not owe while at the same time contesting the validity of the bill. Whether Chase or the Court views Zimmerschied's continued payment as reasonable is not a question to be resolved at the motion to dismiss stage. *See Whitney v. The Guys, Inc.*, 700 F.3d 1118, 1130 (8th Cir. 2012) ("We do not believe plausibility should be measured with reference to what a particular attorney or judge deems to be subjectively reasonable behavior."). It is certainly possible that discovery will reveal that Zimmerschied was not making her payments on time, Chase did not actually withdraw the alleged amounts, or the amounts withdrawn were actually applied to Zimmerschied's mortgage balance in compliance with the terms of the Mortgage. But at this stage, accepting the allegations in the amended complaint as true, the Court concludes that

Zimmerschied has stated a claim for breach of contract, and will therefore deny Chase's motion to dismiss with respect to this claim.[7]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 15] is **GRANTED in part** and **DENIED in part** as follows:

1.      Defendant's motion is **GRANTED** with respect to Plaintiff's claims for violation of Minn. Stat. § 47.59 (Count I), Minn. Stat. §§ 47.20 and 47.59 (Count II), Minn. Stat. § 58.13 (Count III), and Minn. Stat. § 58.14 (Count IV), negligent misrepresentation (Count VII), and unjust enrichment (Count IX).   Those claims are **DISMISSED with prejudice**.

2.      Defendant's motion is **GRANTED** with respect to Plaintiff's claims for fraud (Count V) and fraudulent nondisclosure (Count VI).   Those claims are **DISMISSED without prejudice**.   Within twenty-one (21) days from the date of this Order, Plaintiff may file an amended complaint with respect to these claims.

---

[7] Because the Court concludes that Zimmerschied's breach of contract claim, as pled, meets the plausibility requirement of Rule 12(b)(6), it need not consider the new documents produced by Zimmerschied in connection with her response to the present motion to dismiss.  In her response Zimmerschied argues that "[w]hile plausibility may have seemed in question at the outset of this case, there can be no denial of [the] plausible nature of Plaintiff's breach of contract claim" in light of "[r]ecent developments."  (Pl.'s Mem. in Opp'n to Mot. to Dismiss at 3.)  These recent developments include five exhibits filed in connection with Zimmerschied's responsive memo.  (*See* Decl. of Patrick Sutton, Exs. A-E, Mar. 3, 2014, Docket Nos. 26-27.)  Even if consideration of these documents – many of which post-date the allegations in the amended complaint – was appropriate at the motion to dismiss stage the documents all relate to CitiMortgage, not Chase, and therefore would not alter the Court's conclusion regarding Zimmerschied's breach of contract claim against Chase.

3.      Defendants' motion is **DENIED** with respect to Plaintiff's claim for breach

of contract (Count VIII).


DATED:   September 23, 2014                    ___s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                    United States District Judge